### DANIEL M. CANTZON'S LESSEE *v.* FRANCIS DORR.

Where A. sued B. in an action of ejectment for certain lots of land, and the declaration contained two counts, one on the demise of C. and one on the demise of D., and the evidence offered by A. was a certificate, signed by E. as State commissioner, that F. had purchased the lots in controversy and executed his notes for the purchase-money, with a written assignment on the certificate to G., containing a request that the patent should issue to him; also a judgment rendered in the circuit court of Rankin county in favor of B. against G., and execution issued thereon and forthcoming bond forfeited on the 18th of January, 1841, and an execution on the bond levied on the lots 20th May, 1842, the *venditioni exponas* under which the lots were sold to A.'s lessor in January, 1844, and the sheriff's deed to him, dated 5th January, 1846; possession of B., when the suit was instituted, was proven, and also the possession of G. in 1841 and 1842; a deed made by the marshal for the same lots, dated 17th of March, 1846, to B., the lots having been sold by execution against G., was read in evidence, showing that A. and B. both claimed title under G.; B. offered in evidence a mortgage executed by G. on the lots in 1841, convey-

21 *

ing them to J. & Co.: — *Held*, that A. was not entitled to recover on the second count upon the demise of D., as alleged in his declaration.

A. claims as a purchaser at sheriff's sale under a judgment rendered in the circuit court of Rankin county against G. (not the county of his residence) on a forthcoming bond forfeited in January, 1841, but no abstract of the judgment was ever filed in Hinds, the county where the lots were situated, and no execution under it was levied upon the lots until the 20th of May, 1842; and in the mean time, on the 4th of February, 1842, the mortgage of J. & Co. upon the lots was properly registered, and from the evidence was outstanding at the time of A.'s purchase at the sheriff's sale, and of course was a superior lien to the judgment under which the sale took place.

It has been repeatedly held by this court, that the equity of redemption of a mortgage is not the subject of sale under execution at law.

As A. did not then acquire the legal title by his purchase at the sheriff's sale, the want of that is an insuperable obstacle to his right to recover.

It is immaterial whether A. or B. had the better right, the one as against the other, as both are liable to this objection; and A. has not shown a right to maintain his action.

The instructions given by the circuit court may be wrong; yet if *a party against whom they are given is not entitled to recover, this court will not disturb the judgment, if it be correct in principle.*

In error from the circuit court of Hinds county; Hon. P. W. Tompkins, judge.

The plaintiff in error brought an action of ejectment in the circuit court of Hinds county against the defendant, to recover certain lots situated in the town of Jackson. The plaintiff adduced in evidence a certificate signed by S. M. Puckett, commissioner of the State, dated 3d of December, 1833, which stated that on that day O. D. Battle had purchased lots Nos. 5 and 6, and had, as required by statute, executed and delivered his notes, with security for the purchase-money; and also an assignment indorsed on said certificate by Battle to Robert Hughes, with a request to the auditor or secretary of State to issue patents to said Hughes, and the assignment was dated in 1838. He introduced a judgment confessed by said Hughes in Rankin county circuit court on the 16th of December, 1840, for $1,818, in favor of Wm. Royall, and an execution issuing on said judgment, dated 26th of December, 1840, which was, on the 6th of January, 1841, levied on three negroes, and bond taken for their delivery, which bond was forfeited on the 18th

Cantzon *v.* Dorr.

of January, 1841, and a *fieri facias* on said forfeited bond issued but returned not levied on the 4th of December, 1841, and an *alias fieri facias* issued on the 17th of March, 1842. He also adduced the written request of Hughes, that the sheriff should levy said *fieri facias* on lots Nos. 5 and 6, and that he claimed the benefit of the valuation law, which was dated 19th of May, 1842, and granted, the lots being appraised at $10,000; and the sheriff returned, on the 6th of June, 1842, that the lots failed to bring two thirds of their value, and were not sold. A *venditioni* issued the 3d of May, 1844, under which they were sold to the plaintiff for $100 on 3d of June, 1844. The *scire facias* to revive said suit in the name of plaintiff, as administrator of Royall, deceased, was dated June 2, 1845, and the *scire facias* on the bond in favor of said administrator, issued on the 7th of April, 1848, but no return was made on it, except as to application of proceeds under former *scire facias*; also the *scire facias* on the bond in favor of said administrator issued 7th of April, 1848, and returned "no property," by order of plaintiff's attorney, 25th August, 1848; the deed from the sheriff to plaintiff for said lots, dated 5th of January, 1846. The plaintiff then read a deed from the United States marshal to Thomas Dorr, dated the 17th of March, 1846, to show that both plaintiff and defendant claimed under the same person, the said Dorr having purchased them as the property of Robert Hughes under a judgment against him in the federal court, and the plaintiff purchased them under a judgment in the circuit court against Hughes, the sale to Dorr by the marshal having taken place on the 26th of January, 1846, at the price of $3,000; and the plaintiff also proved that the day on which the sale to Dorr took place was on the 4th Monday of the month, and that said Hughes was in possession of lots in 1841 and 1842, but J. M. Duffield was in possession at the time this suit was instituted.

The defendant Dorr then read in evidence the record of the United States Court judgment in favor of *Dorr & Co.* v. *Hughes et al.*, dated the 20th of May, 1840, for $5,832.87, and a *fieri facias* issued on it the 15th of June, 1840, but stayed by plaintiff's attorney 4th of September, 1840; also an *alias fieri facias* issued 6th of January, 1841, was levied by the marshal on the

26th of January, 1841, on certain negroes, and a forthcoming bond taken, which was returned forfeited on the 24th of April, 1841; and on the 11th of June, 1841, the *fieri facias* on the bond issued, which was levied on the said lots in Jackson, and the sale stayed by plaintiff's attorneys, and an *alias* issued the 29th of December, 1841, which was also stayed by order of plaintiff's attorney. On the 11th of July, 1843, a *venditioni* was also issued, which was stayed, and an *alias* issued on the 22d of January, 1844, which was also stayed as aforesaid, and a *pluries venditioni* issued on the 9th of June, 1845, and the return of the marshal showed the sale was postponed for the want of bidders. And on the 26th of December, 1845, an *alias pluries venditioni* was issued, under which, on 26th of January, 1846, the said lots were sold to Francis Dorr for $3,000; and the defendant also read in evidence the patent from the State to Robert Hughes for the lots. To prove an outstanding title the defendant read a copy of a mortgage from Hughes and wife to Gillespie, Jones & Co. on the lots in suit, dated 3d of May, 1841, and recorded in Hinds county probate court on the 4th of February, 1842, and defendant also read the assignment from Battle of the certificate of purchase of the lots by Puckett, and the transfer thereof by Puckett to Battle.

The defendant then asked the following instructions, which were given the jury, namely: —

1. That if the jury believe from the evidence that we have shown an outstanding title under mortgage or judgment liens, older than that under which plaintiff claims, they must find for the defendants.

2. That a mortgage from Hughes, recorded in Hinds county the 4th of February, 1842, will, under the laws of this State, take precedence of any judgment in the circuit court of Rankin county, unless the jury believe from the evidence, either that an abstract of such judgment from Rankin county was delivered to the clerk of the circuit court of Hinds county for record before the delivery of the mortgage for record, or else believe that such judgment from Rankin county was enforced by the delivery of an execution thereon to the sheriff of Hinds county, before the delivery of such mortgage for record.

3. That a judgment of the United States court for the southern district of Mississippi against Hughes, a citizen of Hinds county, Mississippi, is a lien on all the property of said Hughes in Hinds county, Mississippi, from the time of its rendition; and if the jury believe from the evidence, that the judgment, under which the plaintiff's lessor claims, was rendered in the circuit court of Rankin county, then our judgment from said federal court takes precedence as a lien of said judgment from Rankin circuit court, and is a better lien; unless the jury also and further believe that an abstract of said judgment from the circuit court of Rankin county was delivered to the proper officer of Hinds county for record, before the date of the rendition of our judgment. The judgment referred to herein refers to the judgment on the forthcoming bonds in both the records alluded to.

The jury found a verdict for the defendant, and the plaintiff prayed a writ of error to this court.

*Tifft* for appellant.

*T. J.* and *F. A. R. Wharton* for appellee.

Mr. Justice HANDY delivered the opinion of the court.

This was an action of ejectment brought by the plaintiff in error against the defendant, for certain lots or parcels of land situate in the city of Jackson. The declaration contains two counts, one on the demise of Cantzon, and the other on the demise of one Orin D. Battle; and on the trial below, the following evidence was offered in behalf of the plaintiff: a certificate signed by Samuel M. Puckett, State commissioner, dated 3d December, 1833, that O. D. Battle had on that day purchased the lots in controversy, and executed his notes for the purchase-money according to law; also an assignment of that certificate written upon it by Battle to Robert Hughes, dated —— day of ——, 1838, containing a request that the patent should issue to Hughes; also a judgment rendered in Rankin circuit court in favor of *William Royall* v. *Robert Hughes*, on the 16th December, 1840, the execution and forthcoming bond

thereon, which was forfeited 18th January, 1841, the execution on bond levied on the lots in controversy, on the 20th May, 1842, the writ of *venditioni exponas* under which the lots were sold to the plaintiff's lessor on the 3d June, 1844, and the sheriff's deed to him dated 5th January, 1846. He also proved the possession of the defendant when the suit was instituted, and the possession of Hughes, in 1841 and 1842; and read in evidence a deed made to the defendant by the marshal for the same lots, dated 17th March, 1846, which were thereby sold under execution against Hughes, in order to show that both plaintiff and defendant claimed title under Hughes.

The defendant then showed a judgment in the circuit court of the United States for the southern district of Mississippi, against Robert Hughes, rendered in May, 1840, and executions thereon, and a forthcoming bond forfeited 24th April, 1841; also sundry executions which were stayed, and an execution issued in December, 1845, under which the marshal sold the lots on the 26th January, 1846, to defendant; also a patent granted by the secretary of State of this State to Robert Hughes for the lots, dated 25th November, 1839; and, in order to prove an outstanding title at the time of the purchase of the lessor of the plaintiff, he offered in evidence a mortgage made by Hughes to Gillespie & Jones, dated 3d May, 1841, and recorded 4th February, 1842, conveying the lots in controversy to secure a debt of $13,270.

Under the instructions of the court, the verdict was for the defendant, and hence the case is brought here by writ of error.

The determination of the propriety of the judgment below, turns mainly upon the question whether the evidence showed such legal title in Cantzon, the lessor of the plaintiff, as is necessary to maintain the action of ejectment.

In the attitude in which the case is presented, we do not think that the plaintiff is entitled to recover on the count upon the demise of Battle. It is true that the certificate of purchase granted to him by the State commissioner, is made evidence of title by the act of 1833. Hutch. Dig. 104, art. 9. But it cannot be used for such purpose in behalf of the plaintiff here, for the following reasons: 1st, he has shown, as a part of the evi-

Cantzon v. Dorr.

dence of his own title, that the certificate had been transferred by Battle to Hughes, and that Hughes went into possession of the premises. The assignment entitled Hughes to the certificate, and consequently deprived Battle of the right to use it as evidence of title against Hughes, as he would have been entitled to do without the transfer of it under the statute. This, together with the delivery of possession to Hughes, estopped Battle from claiming title under the certificate against Hughes. 2d, the plaintiff based his right to recover upon the title of Hughes. He offered evidence of the title under which the defendant claimed, in order to show that both the plaintiff and defendant claimed title from Hughes. Such evidence would have been incompetent for any other purpose; and after having put his right to recover upon Hughes' title, he will not be permitted to shift his ground, assert that Hughes had no title, and set up a different title. From the whole course of proceeding on the trial, it is manifest that the case was tried in reference to the title of Hughes, both parties claiming his title. It was so treated by the parties, and so decided in the court below, and must be so considered here.

Under the evidence, then, Was the plaintiff entitled to recover on the title of Hughes in the first count in the declaration? He claims as a purchaser at sheriff's sale under a judgment rendered in Rankin county, not the county of Hughes' residence, on forthcoming bond forfeited in January, 1841. No abstract of this judgment was filed in Hinds county, where the lots are situate, and no execution under it was levied upon the lots until the 20th May, 1842. In the mean time, and on the 4th February, 1842, the mortgage of Gillespie & Jones upon the lots was registered in Hinds county, and, for aught that appeared in the evidence, was outstanding and unsatisfied at the time of the plaintiff's purchase at sheriff's sale; and, of course, the mortgage was a superior lien to the judgment. It has been held again and again by this court, that the equity of redemption of a mortgagor is not the subject of sale under execution at law. *Thornhill* v. *Gilmer*, 4 S. & M. 153; *Baldwin* v. *Jenkins*, 23 Miss. 206; *Wolfe* v. *Dowell's Lessee*, 13 S. & M. 103; *Boarman* v. *Catlett*, Ib. 149; *Henry* v. *Fullerton*, Ib. 731. And it

follows that the plaintiff did not acquire the legal title by his purchase; and, upon the evidence as presented, this was an insuperable obstacle to his right to recover. It is immaterial whether the plaintiff or the defendant had the better right, the one as against the other. Both were liable to this objection, and as the plaintiff was the party seeking to enforce his right, it is sufficient to say, that he has not shown a right to maintain the action.

Though the instructions given by the court at the instance of the defendant may be wrong, it is manifest from this view of the case, that the plaintiff was not entitled to recover, and the result was correct.

The judgment is, therefore, affirmed.